Ron is the fourth case this morning. Paul, Central Laborers' Pension Fund, et al. v. KMC Masonry, LLC, and Nicholas Associates. On behalf of the appellants, Mr. Paul Burks, on behalf of the state, Mr. John Baldrige, on behalf of the laborers' union, and Ms. Karen Engelhardt, I apologize. My client is the Laborers' Pension Fund. Thank you. And on behalf of the appellants, Mr. Charles Lewis. All right. Mr. Burks, I believe you're going to start. Thank you. Good morning. My name is Paul Burks. I'm an assistant attorney general, and I represent the intervener appellant, state of Illinois. The state intervened in this action in order to defend the Illinois Mechanics of the Union Act against a claim of preemption by federal law. I will be splitting the time for the appellant today really three ways. I'll be speaking for the initial ten minutes of the argument. Mr. Walters will speak for five minutes. The remaining five, and Ms. Engelhardt will handle the rebuttal for the appellants. Are we going to have a buzzer in ten minutes? Okay. Thanks. Thank you. So the Mechanics' Lien Act permits laborers who work on public construction projects to intercept money owed to them for their labor before it's paid to a contractor. Counselor, real quickly, the state of Illinois Mechanics' Lien Act does not in any way refer to ERISA, does it? It does not. It does not refer to ERISA. It says any person who furnishes labor shall have a lien on those public funds that have yet to be paid. So if they haven't been, they're still in the hands of the public body, you attach your lien to that for recoupment of costs of labor. So the question in this case is when a laborer, a person is owed money in the form of fringe benefits, whether they could use the Mechanics' Lien Act to attach that money. There's not really any dispute that if there were wages that were owed, the Mechanics' Lien Act would apply. It's simply the fact that the money that's owed was owed in the form of fringe benefits that sort of caused the legal issue to arise here. And whether preemption applies under ERISA, I think in Illinois at least, starts with the case of Shultz, which is a 1996 Supreme Court case that's cited in the initial section of our brief. And that case is not factually on point. It involved rather the Illinois Common Fund Doctrine was preempted by ERISA when it was applied to a health and welfare benefit fund. But it's on point because it really explains, it's where the Supreme Court explains how we determine whether ERISA preempts a neutral state law. And in that case, in Shultz, the court goes through the history of sort of ERISA preemption and says that there's been a fundamental shift in the analysis of preemption starting with the Supreme Court case of Travelers in 1995, and that the preemption jurisprudence has sort of moved away from a construction of the word relays, which was the old way of doing it, more towards a question of whether the state law interferes with the purpose of ERISA. And after the court sort of goes through the history and says, look, we're going to look to the purpose of ERISA, we're going to look at the state law, we're going to see if there's a conflict, it then identifies three criteria to look to in the state law. Was the state law intended to regulate ERISA funds? Does the state law single out ERISA funds for special treatment or predicate rights and obligations on the existence of an ERISA plan? And third, does it have the effect of dictating or restricting the manner in which ERISA plans structure or conduct their affairs? That's the three-prong test that the Illinois Supreme Court has identified for this analysis, the ERISA preemption analysis. That's the three-prong test that this court utilized in Hinterlong, which was a medical malpractice claim, and we think that's the analysis that applies now to the Illinois Mechanics-Lean Act. In that analysis by the court, does that allow for the consideration of whether the State Mechanics-Lean Act qualifies as an alternative enforcement mechanism? It does. And, in fact, I think the second prong, really, when it says, does it predicate rights and obligations on the existence of an ERISA plan, that's really referring to those alternative enforcement mechanism cases. The principal one that the appellees rely on is one called Ingersoll-Rand, which was a United States Supreme Court case, and it involved a claim by a participant in a plan for wrongful discharge against his employer, alleging that his employer fired him to avoid paying him benefits under the plan. And it went to the Illinois Supreme Court, and the Illinois Supreme Court determined that that was an alternative enforcement mechanism. It was precluded. It was preempted by ERISA because it predicated his rights under the State law on the existence of a plan. Isn't that really the critical issue here? It would seem to me that whether or not it qualifies as an alternative enforcement, which would trigger the preemption, is really the crux of the issue in this particular case. So why is it not? Why is it not an alternative enforcement mechanism? I think there's two fundamental reasons why it's not an alternative enforcement mechanism. One, it does not mention ERISA, and it doesn't predicate any rights on the existence of an ERISA plan. And so what an alternative – let me say what an alternative enforcement mechanism is. It's a claim that you could bring under ERISA is an enforcement mechanism under ERISA. So if I could sue my employer for wrongful discharge under ERISA, or if I could sue the fund for denial of benefits under ERISA, then I can't sue those people in state court under some analogous state claim. And what's going on in that structure is basically ERISA creates – it creates responsibilities and it creates burdens, right? So if you participate in ERISA, if you either fund a plan or you participate in a plan or you administer a plan, you have certain rights, you have certain obligations, and the benefit of doing that is that – one of the benefits is that all litigation against you by those who are also involved in ERISA will be funneled into the ERISA statute. It provides revenues there as well. If you look at the objectives of ERISA, it's somewhat inconsistent to utilize mechanics in that, is it not? No, I think it's completely consistent because as this court said in Hinterlong and Supreme Court in Shultz said, the fundamental purpose of ERISA is to protect the benefits of employees. And so what we're trying to do here is protect the benefits of employees, is to get the money contributed to those funds so that they're not underfunded. And we're using a neutral state law to go after somebody liable for it. But don't you have another mechanism that's specially set out for that? There's a mechanism set out for going against the employer within ERISA to get those contributions. And we utilize that mechanism, right? We've got a judgment against the employer under ERISA. But we couldn't sue KMC or we couldn't sue the school board or we couldn't intercept those funds under ERISA. There simply is no cause of action there. And as they like to point out, they're not a contract. They never signed a collective bargaining agreement. They don't have any of the burdens of ERISA. They don't participate in ERISA. But what they want is all the benefits of ERISA, right, which is to preclude any claims against them on the basis of ERISA, even though they haven't adopted or, you know, they don't utilize an ERISA fund. They don't participate in ERISA. And our position is that an alternative enforcement mechanism is a claim against somebody who's a party to the ERISA agreement. Those claims against those people have to be brought under ERISA. Claims against people who are strangers to the ERISA agreement, they're liable under state law like anybody else. They're not protected by ERISA because they have no obligations under ERISA. Isn't the existence of an ERISA plan critical to this cause of action because you're relying on the plan to collect? You're relying on the CBA to collect this motivation? I would say it's not critical to a plan because the statute is neutral, right, in the sense that it's not critical to the cause of action because the statute says any person who's owed money can collect it through this lien. And under a case called the Bain in the Illinois Appellate Court, it says that funds can stand in the shoes of laborers and collect money. So we are like any other person, essentially. It's neutral as to whether or not you're collecting money for funds or collecting money for wages or collecting money for benefits or collecting money for some other reason. The statute is completely neutral. And so the existence of the fund is not critical to the claim. So when it says, I mean, this term cause of action is kind of what's, you know, is it this cause of action, this one little cause of action that you're relying on or the mechanics lien? Well, I would say that the cause of action, this does come from the Ingersoll-Rand case. This sort of entire area of preemption comes from the Ingersoll-Rand case. And what that person's claim was, it was a wrongful discharge claim. And the claim was sort of against public policy because you failed, you didn't want to pay me my benefits, so you terminated me, so you discharged me. And so they said that cause of action without the ERISA plan, there would be no such cause of action at all without the benefits. In our claim, there would be a cause of action for money paid. It's just that in this particular circumstance, the money owed is owed for benefits. So it's neutral as opposed to singling out ERISA plans for special treatment. Counsel, as I understand it, post-travelers, there's a couple of state appellate courts that had occasion to revisit a similar issue under their state mechanics lien claim. One is this Forsberg doctrine. One was Washington TRIG viewpoint. So which one do you think, which line of reasoning should we follow? We think the Forsberg analysis is the better analysis. And it's the majority analysis. I think on page 26 of our opening brief, I listed a lot of the cases, Battenport in California, Forsberg in Utah, New Jersey's, there's a New Jersey district court, there's a number. The only court that has adopted the TRIG analysis is TRIG in a 5-4 opinion. And really, it comes down to, and I think Forsberg really speaks to this quite clearly. And there's a First Circuit case called, that I just think is well-reasoned, well, I'll take it, Carpenter's Local Union, that's also cited in the briefs, that says, look, if you're not part of the ERISA agreement, if you're not an entity that could be sued under ERISA, that has obligations under ERISA, that has duties under ERISA, that there's remedies against under ERISA, if you're not within that purview of the ERISA agreement, then state law applies to you like anybody else. You only get the protections of ERISA if you adopt the duties of ERISA, if you sign the collective bargaining agreement. Didn't the Second Circuit go the other way, too, though? At least partially go the other way? They did partially go the other way. A case that's sometimes referred to as hollow or plumbing industry, that case does, in fact, refer, that involves a statute that, in fact, specifically refers to an ERISA plan, which is distinguishable from our statute. But I will agree that some of the reasoning seems to echo the trade reasoning. But those two cases are in the minority, and one of them really is distinguishable. Thank you. Is Ms. Engelhardt or Mr. Walters here? Mr. Walters? Thank you. Thank you. Good morning. Good morning. I'm up here because I represent Central Labors, and we had two arguments within our brief. The first one was on preemption. The second one was on the fact that all parties within the case were dismissed. And it's our argument that among the parties plaintiffs within the circuit court complaint, a number of them were not ERISA funds. They are not ERISA funds. ERISA defines very clearly who is an ERISA fund, and that is simply a fund that provides benefits to employees or their beneficiaries or their dependents. And a lot of these funds or plaintiffs that are plaintiffs in the circuit court case are not ERISA funds. They do not provide benefits to employees. Those are Midwest Region Foundation for Fair Contracting. That is a joint organization made up of labor representatives as well as industry representatives. The Industry Advancement Fund, that's a fund whose purpose is to, as it says, is to advance the building and construction trade in a particular area. It does not provide benefits to participants or beneficiaries. What were these folks seeking in this complaint, though? Well, they were seeking contributions that are part of the collective bargaining agreement. They're seeking contributions to the funds? Correct. There's a difference. There's, like, employee benefit funds, which, you know, and then there are fringe benefit funds. They're different. And in this case, the circuit court threw out everybody. And if you look at ERISA Section 1001, 1002, it basically spells out who can be an ERISA plan. And it has to be either for pension or disability benefits. It has to be for welfare benefits, vacation benefits, even legal benefits, and apprenticeship and training benefits. These funds don't do that. And those funds, those benefits have to be exclusively for the participants or the employees or the beneficiaries. These funds do not do that. So the circuit court then erred in what specific manner? I'm sorry? The circuit court then erred in dismissing the complaint in what specific manner? What should it have done? Well, it should have left it in the suit because they still had a right to seek monies under, public monies under the Mechanic's Lien Act because they still had contributions. Not only that, but there was one labor organization as well. And those monies, those are actually monies taken from the employees' paychecks to pay dues to the local labor union. That was also dismissed out. And we thought that was completely in error substantively, procedurally as well, because what we did after we got the motion to dismiss, we filed a response. Within that response, we get an affidavit from Roger Shoup, who is the Director of Employer Contributions at Central Waivers. He testified in his affidavit what these funds were. And we got no counter affidavit in reply. From a procedural or technical standpoint, there was no sort of rebuttal or formal legal rebuttal to that affidavit. That affidavit, as well as the pleadings, which specifically defined these organizations, those should have been accepted as true, and the case should not have been, those claims should not have been thrown out. So we are asking that, for the court to overturn that part of the decision as well. So those organizations that were non-ERISA funds were due monies from KMC? Correct. Well, they're due public monies. Correct. And then I'd just like to go back and basically, from a substantive and procedural standpoint, I think that case should be remanded back to the circuit court. So what we have in that case, we've got non-ERISA funds. Similarly, what we have with the preemption is we have a non-signatory contractor. And throughout my brief, the major theme is Section 1145 requires you to be a signatory to a collective bargaining agreement. And if you're not, ERISA doesn't apply. Take my time, son. Thank you. Anything else, sir? No. Thank you. Mr. Lewis. Good morning, Your Honors. Counsel may please the court, Charles Lewis, on behalf of Nicholas and Associates, with respect to the claims of the central laborers in the DeKalb County matter, and Nicholas and Associates in Canaan School District No. 302, with respect to the Laborers' Pension Fund matter in Canaan County. Let me address the last issue first. The collective bargaining agreement that KMC-Masonry signed was with the Central Laborers' Pension Fund and North Central Health and Welfare Fund, both of which are governed by ERISA. The fact that these two entities may have then distributed fringe benefits funds to other entities is not relevant. It doesn't make any difference that the obligation to pay those funds was to those two ERISA fringe benefit funds that I just named. In addition, the other entities are covered by ERISA, and ERISA's broad definition of a plan, as we've noted on pages 37 and 38 of our brief. Let me summarize perhaps up front the issues before the court this morning. They are whether the plaintiff's use of Section 23 of the Illinois Mechanics-Lean Act as an alternative to the remedies provided by ERISA to recover unpaid contributions is preempted by the express preemption clause of ERISA, and I'm talking about Section 514. The short answer is that because ERISA provides a comprehensive definition of liability for unpaid contributions and remedies for recovery of unpaid contributions, the use of a state law alternative to ERISA is preempted. The argument is how could it be an alternative if it doesn't call for that? The argument from the other side is that a non-signatory, you can't go into federal court and try to get money out of your client based upon ERISA that are non-signatory, so how is that an alternative? Right, that's why it's an alternative enforcement mechanism. What's the primary enforcement mechanism against your client? There is none against my client because my client is not a signatory to it. There are two categories of individuals or parties that are liable under ERISA for contributions. He's not an ERISA entity. Pardon me? He's your client and an ERISA entity. No, my client is a general contractor that agreed to construct two schools, one for the DeKalb County School District, one for the Kane County School District. I understand, so how are they precluded? Because ERISA under Section 515 says there are two categories of parties who are liable for contributions. Number one is an employer who is a signatory to a plan. Number two is a signatory to a collective bargaining agreement that requires them to make these contributions. Under the normal statutory construction, if parties are not included in the description of who is liable, they are excluded. The two parties that are named as having obligations under ERISA are set forth in 515. The fact that we're not set forth, Congress just didn't forget to provide these ERISA fringe benefit funds with additional remedies. They said the two entities that are responsible for contributions to ERISA funds are the two I just named. So they have not recognized your client? Not under the Illinois Mechanics Lien Act. That's preempted. And not under Section 515 because we are not named as a party that is responsible for contributions. Well, how do you distinguish your argument from the argument that was made in Forsberg under a similar state mechanics lien claim in which the court held and other courts have held subsequent that it does not, ERISA does not preempt the State Mechanics Lien Act? Well, I say it does preempt the Mechanics Lien Act. You're saying that, but how do you distinguish this from the other cases? Okay, the ultimate authority on that is the United States Supreme Court. First of all, let's remember McHugh, the first district case, found that there was preemption in identical circumstances to these cases. McHugh was a gentleman. That was before or after Travelers, and was that before or after Forsberg? That was before Travelers, after. Travelers, let's remember what Travelers really said. Travelers could have said alternative enforcement mechanisms are no longer preempted by ERISA. Instead, they said just the opposite. They said alternative enforcement mechanisms are recognized as valid bases for preemption, and the United States Supreme Court noted the cases of Ingersoll Rand, which we talked about, also noted the continued vitality and validity of pilot life, both of which McHugh Court relied on. But that begs the question. The question is whether or not it is an alternative enforcement mechanism. You can say it is, but is the Illinois Statute to Mechanics Lien Act really an alternative enforcement mechanism? The answer would be yes. The enforcement mechanism contained in ERISA is an enforcement against KMC, not against my client. So this is an alternative enforcement mechanism to the mechanism that is contained in ERISA against KMC. And once you have that remedy set forth in ERISA, explicitly, there's no doubt about it, they have the remedy. They sued KMC in federal court, federal district court. They got a judgment. And once you recognize that that is the enforcement mechanism, the United States Supreme Court said there is no alternative enforcement mechanism to those funds from a non-signatory that is not preempted. And I agree that this alternative enforcement mechanism is still alive and well under the case law. Now, you cite McHugh, and McHugh was a prevailing wage act case. Yes. Okay. Does McHugh, the validity of McHugh change at all in light of Dillingham, which is a U.S. Supreme Court case, prevailing wage case in California, that found that that prevailing wage act was not an alternative enforcement mechanism? Well, I think the facts are different in Dillingham, and I'll have to refresh my memory, but I don't believe that they were going after fringe benefits in Dillingham. It was a difference in payment for apprentices that were in a program or weren't in a program. They said it was a tenuous, indirect effect on ERISA. McHugh said as far as the fringe benefits, the collection of fringe benefits brought in actions, brought by fringe benefit funds under the prevailing wage act, clearly that is preempted by ERISA by the expressed language in Section 514. I think the Dillingham facts were significantly different from that if you look at Dillingham, and certainly when you look at some of the subsequent cases that talk about alternative enforcement mechanisms, you're left with a conclusion that if you've got an enforcement mechanism in ERISA and then you're unable to collect for whatever reason, KMC filed bankruptcy in this particular case, you can't then go form shop and cause of action shop because ERISA tells us who's liable for fringe benefits. 515 of ERISA says there are two parties liable, and my client is not one of them. So you can't then go beyond ERISA, which is the whole purpose of ERISA was to create a national uniform set of standards and laws and statutes which governs these types of situations. Do you agree that the focus has been narrowed by travelers, or is it the exact same focus that we had in pilot life in Shaw? Insofar as these two cases are concerned, the focus is exactly the same because the United States Supreme Court went out of its way to reaffirm pilot life. Ingersoll ran, and for that matter McHugh indirectly. They have said, what travelers said is okay, we're not going to look at the language alone in ERISA because the terms relate to or connection with are not particularly helpful. But we are going to look to the congressional intent. Having said that, we would not have fidelity to our prior rulings, pilot life, Ingersoll ran, Shaw, and hold that an alternate enforcement mechanism is not preempted. Those cases held that it was, and indeed this is a case where an alternate enforcement mechanism by way of section 23 of the Illinois Mechanics Levy Act is being pursued in order to collect contributions from a non-signatory to collect a bargaining agreement. That's why my client didn't sign the collective bargaining agreement. So we wouldn't have to pay these types of ERISA fringe benefits when one of its subcontractors didn't. So I mean your argument is that the analysis as it relates to mechanics liens cases being an alternative enforcement mechanism against a non-signatory, that hasn't changed at all in light of travelers. We don't look at anything differently in that little aspect of ERISA. If the United States Supreme Court had said, we hereby overrule pilot life, we hereby overrule Ingersoll ran. Did we read the concurring opinion of Dillingham by Justice Scalia? Where he talked about... Where he talked about why don't we just say we did this? Why don't we just say we overruled these things? Why are we muddying the waters further because every term we're taking two or three of these ERISA cases? Well, and frankly that's the complaint of the United States Supreme Court that they have so many ERISA cases and, you know, that's well known. But the statute wasn't the easiest statute to apparently formulate and isn't the easiest to read. I think we finally found something that's more complicated than the rule against perpetuities. I mean, it's not easy. That could be debatable. Let me get sidetracked a little bit here. In light of Forsberg and some of the cases subsequent, how do we distinguish the holdings in those cases and the applicability to this case? Well, I think you have to revert to the Supreme Court decision of travelers. They claim it's a seat change. I don't know what seat change. It didn't change the seat that I'm in with these cases. Section 23 applies only to these cases. We're not asking for a broad preemption in all matters with respect to Section 23. We're saying with respect to fringe benefit funds who claim monies that were already paid to a subcontractor. Remember, this $260,000 was already paid to KMC. KMC didn't pay the funds. Now they want us to pay the $260,000 again because they filed notices. Elaine and the school districts are holding that money, and they let this go on for six months. I thought I read somewhere in the briefs that KMC had a complaint against someone else for not paying. Well, let me talk about that briefly. There was a complaint filed by KMC against Nicholas claiming that it was not paid. All of that was due and owing to Nicholas, pardon me, to KMC as a result of the Cayman Project. I commend to the court a reading of that court file, which contains a counterclaim filed by Nicholas against KMC seeking over a million dollars in damages as a result of KMC masonry's failure to complete the job and failure to pay subcontractors, which Nicholas then had to go pay. I'm talking about KMC subcontractors. Now, when you review that court file, you'll also see a counterclaim, a third-party complaint against Mr. Johnson, the president of KMC, also seeking over a million dollars, alleging fraud. He defrauded my client through contractors' sworn statements and other matters. So we then obtained a million-dollar default judgment against KMC and its president, basically because of the fraud. KMC and Mr. Johnson then filed bankruptcy, and the trustee as an independent fiduciary of the estate decided that the claim was worthless, that KMC's claim was worthless, and it abandoned the claim. So shame on them for suggesting that there was any validity to that claim at any time. There never was. My clients had to pay over a million dollars in excess of the subcontract price with KMC to finish KMC's work and to pay subcontractors that KMC didn't pay. So when we look into the facts of that case, the fact that the trustee knew what that claim was about and abandoned the claim because it was worthless, you'll see that neither – that case is of no help to the unions in this particular matter. Now, you cited McHugh's – McHugh, which was decided before Travers, correct? Right. What is the continuing validity of McHugh in light of Travers? It continues to be valid. McHugh relied upon Ingersoll Rand and Pilot Life, both of which preceded McHugh. The United States Supreme Court in Travers said Ingersoll Rand and Pilot Life are still valid law. That makes McHugh valid law. So nothing has changed. Again, Justice Scalia, perhaps in frustration, said, gee, why don't we come out and change things, just overrule it? They didn't. And the U.S. Supreme Court is the ultimate authority on preemption, on who is able to bring claims and who is responsible for delinquent contributions, not a party that's not a signatory to a collective bargaining agreement. And look at the language of Section 502. And I think Section 502, which was cited in that Peoria Union Stockyard case, is also restrictive on what a fringe benefit fund can do in terms of suing and being sued. Let me just say in closing that, as I said just a minute ago, the United States Supreme Court had an opportunity to overrule those cases that hold an alternate enforcement mechanism triggers preemption but refused to do so and rather reaffirmed their validity. It specifically held that alternate enforcement mechanisms are preempted by the express language of ERISA and the cases before this Court are attempting to utilize such an alternate enforcement mechanism through Section 23 of the Illinois Mechanics Lean Act. The decisions of the Circuit Court of DeKalb County and the Circuit Court of King County should therefore be affirmed. Thank you very much, Counsel. Ms. Ingersoll, for both. Good afternoon. Karen Egelhardt. I'm representing the Labor, Pension, and Welfare funds in this matter. And with respect to this ERISA preemption issue has come up with respect to a motion to dismiss. In other words, all the facts in the complaint are deemed true and there is really no issue that opposing counsel raised about the payment of the tier, the subcontractor, one tier above my client or the direct signatory. And whether that's inequitable or not doesn't come into play with Mechanics Lean Act because the purpose of them is for protection of employees, material suppliers, where the subcontractor on the low level hasn't made payment and the monies are still available due to the Public Fund Act. But his client already paid. First of all, that's not alleged in the complaint, obviously. And he's saying that the law is preempted under ERISA, the state statute. But the state statute doesn't provide that as a defense. That's not a defense. The question is whether we've been paid and my fund hasn't been paid. And then the other question is, is the money still available? Unlike private liens where we can foreclose on the property, this is a school. We can't foreclose on the property. So the law is a little bit different. We foreclose on the money held by the school board for the purposes of making sure everybody's been paid. Otherwise, Mr. Lewis's client would have been paid. But the money was still there and the work hadn't finished. And we notified them properly and informed them to hold that money because guess what? The lowest tier subcontractor didn't pay us. Now, all the inequities about that can be sorted out once we get moving and decide that the state law isn't preempted. And I'd like to direct your attention to Travelers, which was decided after McHugh, which is a very important point, and which Your Honors have mentioned really did change the trend of what is to be looked at here with respect to preemption. And preemption became whether or not the plan administrators are forced to deal with different states differently because of their various state laws. And the next big Supreme Court case is called Eagle Hoth, which is a case where the beneficiaries of Washington State were changed by the state law or required, you know, certain people, you know, divorces to be looked at differently. And the Supreme Court says that kind of change would drive administration of a fund crazy because it's a separate state that's asking for a different treatment and our administration must be totally uniform. And that kind of law, which specifically talked about ERISA plans or plans in general, was preempted. It seems like the whole argument is whether this is an alternative to ERISA enforcement. I think one good case to look at to understand what the alternative enforcement mechanisms and defines both that term is the Seventh Circuit decision in what's called Trustees v. Biondi. And that case involved the fund going after a beneficiary who fraudulently told them that, well, fraudulently failed to tell them, concealed his divorce, and permitted his ex-wife to obtain benefits from his fund. They went after the ex-wife. Contrary. Well, there was some litigation about going after his lawyers. But there was a common law fraud case. Right. There were two allegations of common law, but the common law fraud case relied on the ERISA document itself, which was the plan that says, you know, once you're divorced, that's it. We're not covering the ex-spouse. And that was the terms of that particular plan. They didn't want to have to do more work, more coverage, and that particular fund made that rule. And because he violated that rule, the court said, well, look at what we have here. Is this common law preempted? Is the existence of a pension plan a critical element of it? And they looked at the state law fraud, and they also looked at how else would we be able to reach this. But with respect to enforcement mechanisms, it does lay out criteria, which is pretty similar to the Traveler's Review, that you have to look at whether the state statute contains the provision directly referring to ERISA plans. And then if it's unclear, you have to look at the nexus between the state law and the ERISA plan. So just to wrap it up, I think that the mechanics lien provides an excellent source for the funds to go after, consistent with the objectives of ERISA, and protect employees and their beneficiaries from the ‑‑ entirely theirs when they work for those contributions properly and should be paid. Thank you very much. Thank you, counsel. Thank all counsel for their argument. Appreciate it. The case will be taken under advisement with the decision rendered in due course.